Charles M. Walker
U.S. Bankruptcy Judge
Dated: 11/4/2020



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| STEPHEN JETTON TAYLOR | CASE NO: 3:17-bk-04932 |
| | Chapter 13 |
| Debtor. | Honorable Charles M. Walker |
| | |
| STEPHEN JETTON TAYLOR | |
| Plaintiff, | |
| vs. | Adv. No: 3:18-ap-90060 |
| LOANCARE, LLC | |
| Defendant. | |

***MEMORANDUM OPINION***

The fresh start goal of the bankruptcy system does not and should not include a sizeable bonus.[1] No, a fresh start is exactly that: a start. Not a finish that includes a benefit unintended or anticipated by Congress, the parties, or the Court. Here, the Plaintiff seeks such a bonus. A veritable boon through the voidance of a valid, secured interest of a creditor. If so urged, this Court would approve a scenario wherein the Debtor takes opposing positions throughout the case resulting in a secured creditor receiving typical unsecured treatment, and the general unsecured

---

[1] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)) (As numerous cases have repeated throughout the years, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'").

1

Case 3:18-ap-90060   Doc 41   Filed 11/04/20   Entered 11/04/20 15:58:03   Desc Main
Document      Page 1 of 18

creditors treated as having superior standing for distribution. The Court is not so urged and will not so order, or actually re-order, the Code to reflect such an outcome.[2]

## Background

History of the Main Case[3]

Stephen Jetton Taylor (Plaintiff, "Debtor") filed a voluntary petition under Chapter 13 on July 21, 2017.[4] The Debtor's plan ("Plan") was confirmed and provided for monthly mortgage payments as part of a claim ("Claim 8") owed to LoanCare, LLC (Defendant, "LoanCare"), a secured creditor holding the mortgage on Debtor's residence.[5] LoanCare did not file a proof of claim by the bar date, so the Debtor filed on their behalf.[6] The Debtor did not attach any documentation in support of the claim.

In the Middle District of Tennessee, rarely is it the case that the debtor objects to a claim. Customarily, the Chapter 13 Trustee, Henry E. Hildebrand III ("Trustee"), brings any objections to claims—even to those claims filed by the debtor on behalf of a creditor. Here, the Trustee objected to Claim 8 as filed by the Debtor pursuant to Rule 3001(e),[7] stating that:

> Pursuant to 11 U.S.C. § 502(b)(1), Claim 8 should be disallowed. The mortgage note and deed of trust were not included with the proof of claim. Without such documentation, any asserted security interest in the real property of the debtor is unenforceable and the secured claim should be disallowed under 11 U.S.C. § 502(b)(1). Claim 8 also fails to comply with Rule 3001(c). Rule 3001(c) requires that when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. Therefore, without the Note, Claim 8 is not enforceable and should be disallowed. (BK - ECF No. 32).

---

[2] 11 U.S.C. § 101 *ff*. Any reference to "chapter" or "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.
[3] All facts relevant in the matter were stipulated in writing prior to the summary judgment hearing, acknowledged by counsel on the record during the hearing itself, or are otherwise undisputed.
[4] The main bankruptcy case, number 3:17-bk-04932 ("BK").
[5] Listed on Schedule D, LoanCare holds a mortgage secured claim by primary deed of trust on property located at 2606 Mercer Place, Thompsons Station, Tennessee 37179, Williamson County.
[6] Asserting a secure debt of $158,700.00, with arrears in the amount of $6,738.32. (Claims Register). *See* § 501(c).
[7] Any reference to "Rule" is a reference to the Federal Rules of Bankruptcy Procedure unless another reference is stated.

The Trustee served LoanCare at a P.O. Box in Virginia Beach and at a physical address, also in Virginia Beach, to the attention of "Officer, Managing or General Agent." (ECF No. 32). Neither the Debtor nor LoanCare defended the claim and the Trustee's Motion to Disallow was granted based on the lack of opposition. (BK - ECF No. 37).

The Debtor made Plan payments as required,[8] however, pursuant to the confirmation order ("Order") and because Claim 8 was disallowed, all payments that were initially intended for LoanCare pursuant to the Plan instead went to the general unsecured creditors. (ECF No. 38).[9] This resulted in an increased dividend to the unsecured creditors from 20% to 100%, with the Plan completing within seven months, rather than the anticipated 60 months.

The Debtor filed this adversary proceeding (ECF No. 1) on April 20, 2018 seeking to invoke § 506 in order to void LoanCare's lien on the Debtor's residence based on the disallowance of Claim 8.[10]

**Jurisdiction**

This matter came before the Court on the Defendant's motion for summary judgment. This is an adversary proceeding within Rule 7001, and this Court retains jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding because it seeks to determine the extent, priority, and validity of the Defendant's lien. The following constitute findings of fact and conclusions of law pursuant to Rule 7052.

---

[8] The Plan included payment to the Creditor for pre-petition arrears and GAP payments, as well as post-confirmation monthly payments.
[9] The form Confirmation Order used in the Middle District of Tennessee provides: The unsecured pool shall be increased by the "base" amount not needed to satisfy allowed secured, priority, and administrative claims (including the trustee's commission).
[10] 11 U.S.C.A. § 506(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

3

## Legal Standard

Pursuant to Federal Rule Civil Procedure 56(c),[11] summary judgment is warranted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of proving that, in light of facts viewed most favorably to the nonmoving party, there is no substantive factual issue remaining to dispute. *See Limor v. Anderson (In re Scarbrough)*, No. 18-8028, 2019 WL 1418698, at *2 (B.A.P. 6th Cir. Mar. 28, 2019). Further, "[s]ummary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain." *Roman v. CitiMortgage, Inc. (In re Roman)*, No. 14-00255 (ESL), 2018 WL 4801933, at *3 (Bankr. D.P.R. Oct. 2, 2018). In this case, there are no disputed facts, material or otherwise, so summary judgment is appropriate.

## Preliminary Issue

In the response to LoanCare's summary judgment motion, the Plaintiff argues the issue of standing and challenges the authenticity of the note. However, the Plaintiff did not dispute either of these issues in its complaint. The complaint was brought solely to void the lien under § 506(d) based on the disallowance of the claim. The Plaintiff did not challenge the legitimacy of the lien in the complaint, nor at any other time or in any other filing. Therefore, these issues are not before the Court for purposes of summary judgment. *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 817 (6th Cir. 2020) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)) ("Plaintiffs cannot raise new claims on appeal. And they cannot assert new claims in

---

[11] Made applicable to this proceeding by Rule 705

response to summary judgment. Ultimately the plaintiff's amended complaint 'must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.'").

## Discussion

The facts of this matter would be impossible in just about every district in the country, but here in the Middle District of Tennessee, these facts constitute a "perfect storm."[12] The controversy before the Court can be articulated several ways:

a) Should LoanCare's lien be voided under § 506(c) because of the order disallowing Claim 8?[13]

b) Should the Debtors be greatly rewarded for failing to challenge the Trustee's motion to disallow in defense of Claim 8? or

c) Should LoanCare suffer loss of its lien interest for not participating in the Debtors' Chapter 13 case?

However the question is phrased, it remains before the Court to consider the issues caused by: (I) the Debtor's filing of a proof of claim on behalf of LoanCare, and his failure to defend the claim when he did not oppose the Trustee's motion to disallow; (II) the Trustee's filing and notice of the motion to disallow Claim 8; and (III) the Defendant's argument that the Debtor is improperly using the bankruptcy code to attack the lien. The Court will discuss each of these in turn.

---

[12] THE PERFECT STORM (Warner Brothers 2000) (The title refers to the convergence of three weather fronts and the tragic end to a fishing vessel and its crew caught in the unprecedented natural disaster. The result could not have taken place absent the extraordinary and precise alignment of the weather conditions.).

[13] Two Orders were entered regarding to the Trustee's motion to disallow. The difference in the Orders was restricted to one paragraph. The last paragraph of the Order entered on February 20, 2018 at Dkt. No. 37 states "ORDERED, that based upon the disallowance of the claim, the Court need not take up the issue of the amount of the arrearage and the ongoing payment." The last paragraph of the Order entered on February 22, 2018 at Dkt. No. 38 states, "ORDERED, that based upon the disallowance of the claim, the Trustee's request to fix the arrearage at zero and the issue of the ongoing payment is rendered moot."

5

I. The Debtor filing a proof of claim on behalf of LoanCare and failing to oppose the Trustee's Motion to Disallow that Claim

While any creditor may file a proof of claim, 11 U.S.C. § 501(a), Rule 3002(a) requires only unsecured creditors to file a proof of claim for the claim to be allowed. A secured creditor in a Chapter 13 case has the option of filing a proof of claim. *In re Dumain*, 492 B.R. 140, 143 (Bankr. S.D.N.Y. 2013). A secured creditor may opt to not participate in the bankruptcy case and then, upon the conclusion of the case, look to its lien for satisfaction of the debt to the extent of its *in rem* rights. *Matteson v. Bank of Am., N.A.* (*In re Matteson*), 535 B.R. 156, 161-63 (B.A.P. 6th Cir. 2015). A proof of claim must be filed if a secured creditor wishes to participate and receive distributions in a Chapter 13 case. *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015); *Matteson*, 535 B.R. at 163; *In re Dumbuya,* No. 15-33176, 2017 WL 486917, at *2 (Bankr. N.D. Ohio Feb. 6, 2017).

Here, the Debtor filed Claim 8 on behalf of LoanCare as authorized by § 501(c). The claim, in the amount of $158,700, noted in Section 8 that the basis for the claim was:

> MORTGAGE ON HOUSE AND LOT LOCATED AT 2606 MERCER PLACE, THOMPSONS STATION, TN 37179 – RMP: $1,137.50 – ARREARS THROUGH 7/17: $6,738.32

Section 9 stated that the claim was secured by a lien on property.

The Debtor's Schedule D acknowledges the value of LoanCare's security interest as $158,700.00, with a RMP[14] of $1,137.50. The Plan, filed simultaneously with the petition and schedules, states that LoanCare was to be paid $1,137.50 as the RMP, notes gap payments, and an arrearage to be paid in full. It also notes that no lien avoidance will be sought through the plan.

---

[14] Regular Monthly Payment

When the Trustee objected to the claim due to the lack of supporting documentation,[15] the Debtor did nothing to legitimize the claim—nothing to support his previous contentions that LoanCare held a valid lien—nothing to support the payment designated in the confirmed plan. The Debtor's contention that he did not have access to the original loan documents and, at that point, it was LoanCare's responsibility to defend the claim, does not appear sincere. Where did the information come from that provided the basis for the references to the lien in the schedules and the plan? Why file the claim if there was no intention of supporting it when the inevitable objection came from the Trustee?

Had the Debtor truly sought to honor LoanCare's lien and pay the mortgage debt through the plan, he would have sought to find a way to legitimize Claim 8. Courts are split on what is required for a valid proof of claim under Rule 3001(c). *In re Gorman*, 495 B.R. 823, 832-34 (Bankr. E.D. Tenn. 2013); *see also B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931 (6th Cir. 2010) (citing *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005)). There is the "exclusive view" and the "non-exclusive view." *Gorman*, 495 B.R. at 832-33. Both refer to the procedural box checking required to allow a claim.

Adopting the "exclusive view" means requiring "the debtor [to] raise one of the grounds found in 11 U.S.C. § 502(b) to object successfully to a filed claim." *Id.*[16] This view asserts that

---

[15] In this District, the Chapter 13 Trustee frequently and consistently objects to claims that have no supporting documentation.

[16] 11 U.S.C.A. § 502(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
(2) such claim is for unmatured interest;
(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

7

"section 502(b) contains an 'exclusive' list of grounds for disallowance. Failure to comply with Rule 3001(c), which requires the attachment of the writings on which the claim is based, is not one of those grounds." *Id*.

Given the inherent risk that transpired here where the Debtor filed a claim—albeit deficient—trying to pay his mortgagee, and the Trustee's objection inhibited the Debtor's ability to pay under the plan, it appears that a fair and equitable argument can be made to follow the "exclusive view" set forth in *Gorman*. The exclusive view's practical flexibility with the documentation required decreases the burden when submitting a valid claim and reflects the reality of modern-day record keeping. Most debtors cannot produce original or even copied documents to prove the existence of a note and mortgage. Mortgage notes are now sold and

---

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;
(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;
(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--
(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
(i) the date of the filing of the petition; and
(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;
(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds--
(A) the compensation provided by such contract, without acceleration, for one year following the earlier of--
(i) the date of the filing of the petition; or
(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;
(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or
(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

8

Case 3:18-ap-90060   Doc 41   Filed 11/04/20   Entered 11/04/20 15:58:03   Desc Main
Document      Page 8 of 18

resold in securitized bundles, and a debtor cannot be expected to keep up with a set of documents when even their mortgagees are challenged to do so.

As explained by James M. Davis, an attorney in the office of the Chapter 13 Trustee for the Middle District of Tennessee,

> Especially for securitized loans, establishing this proof is often difficult, expensive, and time-consuming. The consequences of a failure to establish the entitlement to enforce the note, however, can be significant . . . . In the claims allowance process in bankruptcy, the dangers to mortgage loan holders may be even greater, as the disallowance of a claim has the potential to be a binding adjudication of the creditor's rights. . . . Indeed, when note owners or servicers in securitization transactions have attempted to produce evidence of chains of title in securitization transactions, they often have struggled."[17]

The struggles faced by loan holders are multiplied for under-resourced debtors when attempting to obtain documentation of their mortgage note and deed. The exclusive view limits the grounds on which a creditor, trustee, or debtor can object to a claim so that procedural box checking will not hinder an efficient, all-encompassing plan.

However, here no argument was made. No opposition presented. No action taken by the Debtor to support his filings and position on the validity of LoanCare's lien. The proof of claim was the Debtor's third acknowledgement of the LoanCare lien and third filing in support of its legitimacy. First, the Debtor listed the subject mortgage on his schedules as a debt secured by the Debtor's residence. Next, the Debtor filed his Plan stating LoanCare's interest would be paid as a secured debt. He then filed the claim pursuant to § 501(c) on LoanCare's behalf wherein he stated the claim would be paid as a secured claim. Following the Trustee's objection, it appears the Debtor altered his position to the point that has brought us here: an adversary filed by the

---

[17] *Paper Weight: Problems in the Documentation and Enforcement of Transferred Mortgage Loans, and a Proposal for an Electronic Solution*, 87 AM. BANKR. L.J. 305, 310-313, 326 (2013).

Debtor seeking to void the lien he has recognized as legitimate in all of his previous filings with this Court.

The circumstances that gave rise to this controversy were entirely under the Debtor's control. As previously stated, the Debtor acknowledged the authenticity of LoanCare's lien three times in sworn statements through the schedules filed with his petition, his plan, and the proof of claim filed on behalf of LoanCare. Rule 3004 allows the Debtor to file a claim on behalf of a creditor. When a debtor does this, the requirements of Rule 9011 impose the same standards and duty on the Debtor as on every other filer of a claim: to make reasonable efforts to ensure that the filing is made for the purpose intended and is a true representation of the assertions in the document. Pleadings and other filings are subject to the rule, including proofs of claim.[18]

Every filer of a claim is held to the same duty of care, as evidenced by the required declaration that the information provided is offered under penalty of perjury and "is true and correct to the best of my knowledge, information and reasonable belief."[19] This statement indicates to the Court and parties that the filer is certifying the contents of the claim, and has not

---

[18] Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers. (a) Signature. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.
(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
[19] Proof of Claim (Official Bankruptcy Form B 410) (mimicking Rule 9011(b) language).

filed the claim to frustrate, hinder, or in any way taint the bankruptcy process. The failure to object to the Trustee's motion brings the Debtor's declaration into question. The filing of the adversary, coupled with the previous filings regarding LoanCare's lien, leaves uncertainty as to the Debtor's intentions in asserting these opposing positions.

II. <u>Notice given to LoanCare for the Motion to Disallow the Claim</u>

This Court, for better or worse, operates using an "if objection" process for motions, set forth in Local Bankruptcy Rule 9013-1(a). Under this process, often referred to as "negative notice," a motion without opposition will automatically be granted once a certain amount of time has passed without objection.[20] If, however, there is a timely objection, the Court will set the matter for hearing. The function of this system depends heavily on the parties providing adequate notice. The efficiency of negative notice cannot be realized at the expense of a party's due process rights.[21] *Scott v. Fort Ord Gen. Credit Union (In re G. Weeks Sec., Inc.)*, 5 B.R. 220, 226 (Bankr. W.D. Tenn. 1980) ("Procedural due process mandates that a litigant receive notice and have an opportunity to be heard.").

The analysis for statutory compliance and due process are related yet distinct. Failure to comply with Rule 7004(b)(3) does not necessarily mean due process rights were violated.[22]

---

[20] Bankr. M.D. Tenn. L.B.R. 9013-1(a) "If Objection" Process. The majority of motions should be handled through an "if objection" process, whereby a hearing date is selected by movant's counsel from the availability calendar found on the court's website. A hearing will be conducted only if an entity files a timely written objection to the relief sought.
. . . (c) (2) . . . Unless Title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure or these local rules provide otherwise, the notice shall provide for a 21 day response period to run from the placing of the notice in the U.S. mail, postage prepaid. The hearing date shall be no sooner than 7 days after the last day to file responses. Departure from this rule requires compliance with LBR 9075-1 . . . . *available at* http://www.tnmb.uscourts.gov/documents/Local_Rules/LOCAL_RULES_OF_COURT_Amendments_Form_C_11-28-2017.pdf.

[21] U.S. CONST. amend. V.

[22] Rule 7004(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

11

Similarly, a party may effectuate actual notice that does not raise due process concerns, and yet that notice may fail to comply with the more stringent, granular requirements of Rule 7004(b)(3).[23]

Rule 7004(b)(3) is aimed at guaranteeing notice that is in harmony with an opponent's procedural due process rights. While "failure to assure service in accordance with the rules is *some* evidence that notice was not effectuated . . . [i]t is not decisive . . . ." *In re Wilkinson*, 457 B.R. 530, 544 (Bankr. W.D. Tex. 2011) (discussing *Saucier v. Capitol One (In re Saucier)*, 366 B.R. 780, 785 (Bankr. N.D. Ohio 2007)). The court in *Wilkinson* held that the technical violation of the service rule did not rise to the level of violating the creditor's due process rights. *Id.* That holding was premised on the fact that the creditor itself initiated the claim and more importantly that the creditor admitted actual receipt of the objection. *Id.* A party that had actual notice "cannot claim a violation of its constitutional rights to due process of law simply because the technical requirements for service of process might not have been met." *Id. Countrywide Home Loans, Inc. v. Terlecky (In re Fusco)*, No. 08-8028, 2008 Bankr. LEXIS 2362, at *17-18 (B.A.P. 6th Cir. Sep. 19, 2008) (Although not deciding within a system that uses negative notice, the Bankruptcy Appeals Panel in this Circuit said, "Countrywide does not argue that it did not receive notice, only that the notice it received did not technically comply with Rule 7004(b)(3). However, notice is adequate when it is shown that although a party did not receive formal notice, actual notice was received."). In the case at hand, there was no actual notice. Likewise, notice was not in compliance with Rule 7004(b)(3). This raises both statutory compliance and procedural due process concerns.

---

[23] Rule 3007. Objections to Claims (Although Rule 3007 would usually apply, the parties here are in abnormal positions, and the court cannot in good faith analyze the application of this rule to the bizarre facts at play: the debtor filed incorrectly, the trustee objected, and also the debtor declined to defend its own motion in the adversary, harming the creditor who had no notice.).

12

Because this Court's grant of the Motion to Disallow would strip LoanCare's interest in property, LoanCare's procedural due process rights had to be observed. This Court cannot confidently say that serving LoanCare without naming a specific individual satisfied procedural due process. Furthermore, whether or not it offends due process, it clearly violates the more stringent standard articulated in Rule 7004.[24] Under Rule 7004, service upon a corporation must be made out to a specific individual at the entity, rather than a general title or role—or list of titles and roles—as made by the Trustee. *Crow v. Ocwen Loan Servicing, LLC (In re Crow)*, Nos. 08-31798, 13-3012, 2013 Bankr. LEXIS 3623, 2013 WL 4668558, at *14-15 (Bankr. N.D. Ohio Aug. 30, 2013) ("First, Bankruptcy Rule 7004(b)(3) requires that notice must be mailed 'to the attention of' at least one of the classes of agents specified in the Rule. This nomenclature—'to the attention of'—generally requires that, as occurred in this proceeding, the addressee of the notice be named to a person individually, as opposed to the use of a generic addressee such as 'to the attention of any corporate officer.' *Saucier*, 366 B.R. at 784. Second, for purposes of Rule 7004(b)(3), a corporation's board of directors, to whom notices in the proceeding were sent, can be assumed to be agents authorized by law to accept service of process on behalf of the corporation."). While some courts sway when the facts favor equity, many courts urge strict compliance with Rule 7004. *Compare Wilkinson*, 457 B.R. at 544 (citing *Countrywide*, 2008 Bankr. LEXIS 2362, at *12-18 (B.A.P. 6th Cir. Sept. 19, 2008) (finding creditor received adequate notice to quell due process concerns under Rule 60(b)(4) despite technical non-compliance with Rule 7004(b)(3))), *with Saucier*, 366 B.R. at 785 ("It is well-established that,

---

[24] Rule 7004(b)(3) Process; Service of Summons, Complaint. "Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

13

given its due process underpinnings, a party's failure to substantially comply with the notice requirement of Bankruptcy Rule 7004(b)(3) renders the entry of a judgment by default improper."); *In re Schoon*, 153 B.R. 48, 49 (Bankr. N.D. Cal. 1993); *In re Ochoa*, 399 B.R. 563, 569 (Bankr. S.D. Fla. 2009) ("Debtor urges this court to adopt a rule that the mere appearance of record by an attorney in a bankruptcy case results in the attorney being an implied agent authorized to accept service of process under Rule 7004(b)(3). That is not the law. Attorneys must engage in some level of active participation before they are impliedly deemed to be agents for service of process."); *In re Pittman Mechanical Contractors, Inc.*, 180 B.R. 453, 454-57 (Bankr. E.D. Va. 1995) (finding "ATTN: President or Corporate Officer" constituted service upon an office, rather than upon an individual officer so service was insufficient).

The Debtor's contention that the firm representing him takes countless cases and cannot effectively service its clients by taking the time to serve each creditor by naming specific individuals, fails and fails miserably. At no point in time and under no circumstances does due process take a back seat to the efficiency of a volume practice.

Before this Court is how the overlay of our negative notice system changes the lens through which we evaluate notice. The Sixth Circuit has not yet addressed the standard of service required when using negative notice. Our negative notice system heightens the risk that a party is not afforded adequate notice, and that inherent risk transpired in this case. Given that procedural due process and its promise of adequate notice are so "elementary and fundamental" to our system, this Court must err on the side of safeguarding due process rights. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

14

of the action and afford them an opportunity to present their objections."). Weighing the increased risk of due process violations stemming from our district's processes, therefore strict compliance with Rule 7004 is necessary. *See, e.g.*, *Hogrobrooks v. Educational Mgmt. Co. (In re Hogrobrooks)*, No. 98-32476-K, 2006 WL 6630689, at *3 (Bankr. W.D. Tenn. Dec. 6, 2006), *aff'd sub nom. Hogrobrooks v. Texas Guaranteed Student Loan Corp.*, No. 07-2178, 2008 WL 4442543 (W.D. Tenn. Sept. 25, 2008) ("It is emphasized here that although the TGSLC is a creditor of Ms. Hogrobrooks, nonetheless it was NOT a named defendant in this adversary proceeding NOR was it properly served with process (i.e., properly served with the summons and complaint) as contemplated and required by FED. R. BANKR. P. 7004.6. The Supreme Court has held that before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied. There must be more than mere notice to the defendant and a concomitant constitutionally sufficient relationship between the defendant and the forum. *See, e.g., Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Proper service of process on a defendant in a bankruptcy adversary proceeding requires the issuance and proper service of a summons and complaint served together as provided under FED. R. BANKR. P. 7004(a).").

Here, the claim was disallowed because at the call of the docket no one appeared for LoanCare, so this Court deemed the Trustee's motion uncontested. The Debtor had filed a proof of claim on behalf of the Creditor then failed to defend it, essentially setting off a ticking time bomb for the Creditor. Faced with the Trustee's motion counting down on negative notice, the Creditor unknowingly rode it out—not only because the Creditor had not personally set the timer by filing, but also because the Creditor never even received notice that a clock was running. This is the perfect storm that happens when the Debtor initiates a blatantly deficient claim on

behalf of the Creditor, the Trustee objects, the Debtor fails to defend the claim, and the Creditor had no notice. Proper Rule 7004(b)(3) notice would have avoided this issue.

In support of his argument that a specific individual need not be named for purposes of Rule 7004, the Debtor offers a single Eleventh Circuit case. *In re Tudor*, 282 B.R. 546 (Bankr. S.D. Ga. 2002) (citing the advisory committee note that naming a particular person, rather than simply a person's title as required literally by Rule 7004(b)(3), might create more problems than it would resolve). The debtor in *Tudor*, like the Debtor in the case at hand, filed for Chapter 13 relief, but the facts in *Tudor* differ from this case in two ways. First, the *Tudor* creditor filed its own proof of claim while here the Debtor filed on *behalf* of LoanCare. *Id.* at 548. Second, the *Tudor* creditor's claim was for $3,721.31 while LoanCare's claim was for a mortgage amount that dwarfs the claim in *Tudor*, so there is more at stake here. Under these circumstances, the Debtor's argued position effectively castrates Rule 7004 and eliminates essential due process considerations.

III. <u>Debtor uses § 506(d) to attack a lien in the absence of a substantive defect</u>

The purpose of § 506(d) is to provide a mechanism for the Court to determine the validity of a secured claim. *In re Lee*, 249 B.R. 864, 866 (Bankr. N.D. Ohio 2000) ("[T]he legislative purpose of § 506 is to provide a statutory means for determining the extent of a claimed security interest. It is not a lien avoidance statute."). The Fourth, Sixth, Seventh, and Eighth Circuits have repeatedly held that a lien cannot be voided unless it is invalid in substance and the Middle District of Tennessee has not strayed from those decisions. In fact, in November 2012, this Court considered the same issues with facts very similar to those in this case. *See Oudomsouk v. Bank of Am. N.A. (In re Oudomsouk)*, 483 B.R. 502, 509 (Bankr. M.D. Tenn. 2012). In *Oudomsouk*, the debtors filed a proof of claim on behalf of Bank of America ("BOA"), the note

16

Case 3:18-ap-90060   Doc 41   Filed 11/04/20   Entered 11/04/20 15:58:03   Desc Main
Document   Page 16 of 18

and mortgage holder on their home.  The claim was disallowed on the Chapter 13 Trustee's motion for failure to include any documentation to justify the claim.  *Id.*  The debtors brought an adversary against BOA, citing § 506(d) to void the lien based on the disallowance of the claim.  *Id.*  Judge Mashburn held on cross motions for summary judgment that the debtors could not use § 506(d) as a means of voiding an otherwise valid and enforceable lien.  *Id.* at 512.  Section 506(d) is available to address genuine problems with a lien, including improper perfection, an insufficient property description, or the lack of a signature.  *See, e.g.*, *Hamlett v. Amsouth Bank (In re Hamlett)*, 322 F.3d 342, 348 (4th Cir. 2003) (holding that the provision only empowers the court to extinguish a lien if it is invalid "in substance").

In this case, as in *Oudomsouk*, disallowance of the claim did not affect the validity of the lien, and that validity was not challenged in the corresponding adversary proceeding.  This Court declines any request to waver from Judge Mashburn's analysis and reasoning, right down to the insistence that the ruling be restricted to the specific chain of events in this contrived controversy of the Debtor's making in a bastardization of the use and intent of § 506.

### Conclusion and Ruling

Although this Court agrees with Judge Mashburn's ruling, it will not order the same result.  In *Oudomsouk*, Judge Mashburn reached back and vacated the order that disallowed the creditor's claim.  To do that in this case would serve no good purpose and would require much more unraveling than in *Oudomsouk*.  Here, the main bankruptcy case was closed after the unsecured creditors had feasted on the funds intended for LoanCare per the provision in the plan that ascribed those funds to them after the disallowance of LoanCare's claim.  To reopen the main case, vacate the order disallowing the claim, and attempt to claw-back distributed funds would be an exercise in futility.  Therefore, the result is that the Debtor, who planned to pay his

17

unsecured creditors 20% and come out of this bankruptcy in a better position, now has paid them 100% and still has his mortgage issues to sort through. Given that the Debtor's actions—and inactions—are a direct cause of these circumstances, it appears he will now lie in the bed he has made.

This case is an illuminating tutorial on how a debtor, creditor and a Chapter 13 trustee perform an intricate dance with respect to each claim. The various positions these parties take coalesce to create either a positive or negative result. The position that each party takes matters and consistency is expected and demanded by the Code in each case to ensure fairness and equity. The opening paragraph of this opinion references the fresh start and its intent, so in closing, once a position is cast, it is in stone and for the Plaintiff/Debtor to take a contrary position from what had been cast breaks the intent of our intricate system that affords consistency and certainty to parties who find themselves under this Court's jurisdiction.

Consequently, there is no genuine issue of material fact and for the reasons stated herein, the Defendant is entitled to judgment as a matter of law. Therefore, the Defendant's motion for summary judgment is GRANTED.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.